## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **Timothy Claridy** | * |
| C/o Law Offices of Michael A. Wein, LLC | * |
| 7845 Belle Point Drive | * |
| Greenbelt, MD 20770 | * |
| | * |
| **Plaintiff** | * |
| | * |
| v. | * **Case No.** |
| | * |
| **UNITED STATES OF AMERICA** | * |
| | * |
| (Specifically But Not Limited to Claims | * |
| Related to Department of Justice (DOJ), | * |
| Drug Enforcement Administration (DEA), | * |
| Office of National Drug Control Policy (ONDCP), | * |
| High Impact Drug Trafficking Area Program (HIDTA), | * |
| And Federal Agents including Off. Keith Gladstone) | * |
| | * |
| <u>**SERVE**</u> | * |
| **Attorney General Merrick Garland** | * |
| **U.S. Department of Justice** | * |
| 950 Pennsylvania Avenue, NW | * |
| Washington, DC 20530-0001 | * |
| | * |
| **And** | * |
| | * |
| **OFFICER KEITH GLADSTONE** | * **JURY DEMAND** |
| | * |
| 601 E. Fayette Street | * |
| Baltimore, Maryland 21202 | * |
| Individually and as a Law | * |
| Enforcement officer for | * |
| UNITED STATES OF AMERICA and | * |
| BALTIMORE POLICE DEPARTMENT | * |
| | * |
| **And** | * |
| | * |
| **UNKNOWN FEDERAL OFFICERS** | * |
| (Involved in Arrest, Conviction, Detention, | * |
| Policy, Incarceration, and Supervision Of | * |
| Officer Keith Gladstone, Also Acting | * |

1

as an Authorized DEA Agent,                    *
As Part of a Joint State-Federal Task Force)   *
                                               *
**SERVE**                                      *
**Attorney General Merrick Garland**           *
**U.S. Department of Justice**                 *
950 Pennsylvania Avenue, NW                    *
Washington, DC 20530-0001                      *
                                               *
**And**                                        *
                                               *
**BALTIMORE CITY**                             *
**POLICE DEPARTMENT**                          *
                                               *
    601 E. Fayette Street  *
    Baltimore, Maryland 21202 *
                                               *
**SERVE**                                      *
                                               *
**Michael Harrison,**                          *
(Individually and in his Official             *
Capacity as Baltimore City                     *
Police Commissioner)                           *
601 E. Fayette Street                          *
Baltimore, Maryland 21202                      *
                                               *
**And**                                        *
                                               *
**MAYOR AND CITY COUNCIL OF**                  *
**BALTIMORE CITY**                             *
                                               *
    C/o Ebony Thompson, City Solicitor *
    City Hall-Room 250     *
    100 N. Holliday St.    *
    Baltimore, MD 21202    *
************************************************************************

## COMPLAINT FOR DAMAGES AND JURY TRIAL DEMAND

Plaintiff Timothy Claridy, by and through his attorney, Michael Wein, Esquire of

the *Law Offices of Michael A. Wein, LLC* hereby sue the following Defendants: United

States of America, Officer Keith Gladstone, Unknown Federal Officers, Mayor and City Council of Baltimore City, and the Baltimore City Police Department ("BPD"), and states as follows:

## INTRODUCTION

1. In these causes of action, Plaintiff Timothy Claridy seeks compensatory damages, punitive damages, attorney's fees, related costs, and other relief, pursuant to 42 U.S.C. §1983 (Violation of Civil Rights under United States Constitution); 42 U.S.C. §1985 (Conspiracy to Violation of Civil Rights under United States Constitution); 42 U.S.C. Section § 1988 (Reasonable Attorney's Fees and Costs Awarded for Civil Rights Claims); and various State Tort and State Constitutional claims, which are also appropriately argued in the Federal claims, including specifically for Malicious Prosecution and Wrongful Imprisonment and "Over-Detention" Imprisonment.  The portions of this Complaint related to Federal Defendants and Federal Agents and/or Employees are pursuant to the Federal Tort Claims Act, under 28 U.S.C. § 1346.

2. Plaintiff specifically incorporates the facts uncovered and discovered through various comprehensive investigations thus far in this matter, and are public record.  This includes the following, specifically "attached to the complaint and incorporated herein by reference" with hyperlinks in blue as well as a hard-copy of the attachment of the 660-page _Bromwich_ Report.  This was an Independent Report and Two-Year Investigation of the Gun Trace Task Force (GTTF) Scandal, led by former Department of Justice Inspector General Attorney Michael

3

Bromwich, and the Law Firm of Steptoe & Johnson.  This Report was requested by Defendants Baltimore City, and prepared in accord with the Consent Decree with the City of Baltimore, overseen by the DOJ and Chief Judge James Bredar of the Federal District Court of Maryland, and available at https://www.gttfinvestigation.org/ . [1]

3.  Plaintiff Timothy Claridy spent *fourteen years* wrongfully imprisoned and it is contended, actually innocent, in Federal imprisonment of a 20-year Federal sentence, due to the unconstitutional actions of both the Federal Government, Baltimore Police Department, and Baltimore City, and their agents—specifically Officer Keith Gladstone. At that time of 2007, Officer Gladstone, despite warning signs and red flags well understood by both the City and BPD (where he had been employed for years), and the United States Government (particularly the Drug Enforcement Administration (DEA)) began work with a Joint "High Impact Drug Trafficking Area" (HIDTA) Task Force which both the City and BPD received money through Federal program grants for the goal to target drugs and guns. Officer Gladstone, then wearing multiple hats including a "DEA Agent" for this Task Force, committed an illegal search, concocted a false inculpatory

---

[1] Consistent with *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991) and due to the potential length of relevant historical facts in the comprehensive 660-page *Bromwich* Report, exceeding the limits of Maryland Local Rule 103 (Effective July 1, 2023), copies are provided this Court through both Hyperlink and Attachment. ("Pleadings should be no longer than necessary and, except in removals of a state action, shall not exceed forty (40) pages in length.  In extraordinary circumstances, parties may seek leave of Court to amend or supplement the initial pleading with additional pages.")

"confession" of Mr. Claridy to justify the search and *post facto,* lied to connect Mr. Claridy, to a gun located in a house which search had already illegally taken place. (What is colloquially called a "sneak and peek" part and parcel of unconstitutional behavior done by Gladstone and other BPD officers) Without this critical and false inculpatory linkage, there was no direct evidence connecting the "recovered" gun with Claridy. Officer Gladstone was the sole person to testify about these critical matters in Federal Court, leading to the wrongful conviction and imprisonment in this case.[2]

4. Beginning in about 2019 information became public with the unsealing of a federal indictment, specifically about Officer Keith Gladstone's involvement with various violations of Civil Rights, himself and with other Baltimore City Police Officers, specifically those with the Gun Trace Task Force (GTTF). As a result of his guilty plea to Civil Rights violations, after some delays due to the COVID-19 Pandemic, Officer Gladstone was sentenced to federal imprisonment for Federal Civil Rights violations and was apparently released a few months ago.

---

[2] "The joint task force, of which Detective Gladstone was a member, was a federally funded effort organized to operate in a "High Intensity Drug Trafficking Area" (HIDTA), and it included both agents of the federal Drug Enforcement Administration and local police officers from Baltimore City and Baltimore County. During the course of its operations, the HIDTA joint task force made hundreds of arrests relating to suspected drug-trafficking violations, of which, Detective Gladstone estimated, 90% resulted in state prosecutions and 10% in federal prosecutions. When the joint task force was initially investigating Claridy and Jones, it had not been determined whether any crimes that might be uncovered would be prosecuted in federal court or state court. At the time, the investigation was 'just [a] narcotics investigation[].'"

*United States v. Claridy*, 601 F.3d 276, 279 (4th Cir. 2010).

In his testimony done in cooperation with the criminal department of DOJ, against one of his fellow co-conspirators (Officer Robert Hankard) on Civil Rights violations from 2014, Officer Gladstone admitted publicly to regularly participating in false testimony, false police reports, false arrests, stealing from suspects, false searches, intimidation, and planting evidence, resulting in said suspects being imprisoned certainly for months. (In Mr. Claridy's case, not addressed with the public testimony, this was specifically for over 14 years.)

5.  In Mr. Claridy's case, he was one of a handful of outstanding *Federal* inmates, who had the misfortune of being subject to the prime GTTF Officer who was both a supervisor to, and lead a considerable amount of the "bad cops" who were rewarded with further resume and job enhancements by the BPD and in this case, the Federal Government. The case as noted from the opening statements, Mr. Claridy's counsel said "Essentially, this case is all about Detective Gladstone. […] All the things that [the United States Attorney] told you regarding observations and statements, that all comes from Detective Gladstone and there's really nothing to back up or corroborate any of that evidence." Tr. Pg. 48, 6/30/2008.

6.  Throughout the proceedings, including appeal, and while imprisoned in Federal Court, Mr. Claridy maintained his innocence and that he had been a victim of Officer Gladstone. In about February 2020, permission was granted for a Second or Successive Sec. 2255 Relief application for Mr. Claridy, represented by the Federal Public Defender's Office, based upon the recently made public

knowledge of the guilty pleas of Officer Gladstone's long-standing corruption. Ultimately it took about 14 additional months before some agreement could be reached, though not technically on the filed 2255 Motion. Instead, despite no such motion being filed in those 14 months, Claridy was released on or about April 27, 2021, due to a "Consent Motion for Compassionate Release." This filing in reality was pretextual as respectfully, Mr. Claridy was of quite good physical health, and understandably desired to be released from his 14 years of false imprisonment. [3]

7. The illegal stop, search, seizures, false arrest, false imprisonment, and intimidation of Plaintiff Claridy, as well as the fabrication of evidence, false statements, and false testimony to support said illegal conduct, were part of a longstanding pattern and practice of illegal conduct, including illegal stops, searches, seizures, and

---

[3] By doing so to provide release, even though it was not remotely argued that there were health issues, the Federal Government potentially reduced the ability to seek Administrative Relief through the Federal Courts for being exonerated. That may be further examined, given the Fourth Circuit's recent decision of *United States v. Paylor*, 88 F.4th 553, 563 n.2 (4th Cir. 2023) (Reversing denial of 2255 Relief, on GTTF case, and allowing discovery to further examine matter and noting "The GTTF is a section of the Baltimore Police Department, now infamous for the corruption which Detective Hersl's trial exposed. The indictment in Detective Hersl's case charged him and six other officers on the GTTF with various acts of robbery and corruption. In total, at least 13 officers were convicted on charges related to the GTTF's corruption and violence against citizens. *See Anatomy of the Gun Trace Task Force Scandal: Its Origins, Causes, and Consequences*, January 2022, https://perma.cc/KQL7-79P2.")

However, this tactic potentially constituting a very strict limitation seeking compensation administratively for exoneration, through Federal Claims Courts, does not apply more generally to Civil Rights civil and constitutional suit violations, including those associated with wrongfully imprisonment and malicious prosecution and justifying damages. *See, Thompson v. Clark,* 142 S.Ct. 1332 (Dec. April 4, 2022).

fabrications and sworn lies. These were also part of a pattern of misconduct, targeted against and done against people in Baltimore, with drug issues and offenses.  This was both planned and by design, as those targeted, faced not only retaliation with little hope of being taken seriously, but potential imprisonment for any outstanding warrants or charges, and thus victims were targeted to avert suspicion and accountability.  This was sufficiently widespread within the BPD to assume the quality of a "custom or usage" of which BPD policymakers had actual or constructive knowledge. The BPD intended that these "customs or usages" continue and/or condoned such behavior by demonstrating deliberate indifference to stopping or correcting them.   This lawsuit therefore also seeks compensation and relief from the injuries including for malicious prosecution and false imprisonment resulting from the Officers' misconduct that was in accord with BPD policies or procedures, condoned by the BPD, and which BPD knew or should have known.

8. Similarly, the Federal Government knew or should have known these problems and policies existed within the BPD and/or with Officer Keith Gladstone, (*see infra* and the incorporated Bromwich Report), and yet willingly promoted him as an "Acting DEA Agent." Thus, the Federal Government knew or should have known, about Officer Gladstone's misconduct to adversely affect the administration of justice in the "Joint Task Force" prosecutions and yet, let him testify without corroboration, and despite unconstitutional actions and inactions underpinning the prosecution.

9. Furthermore, when faced with the prospect a small handful of the victims of the GTTF officers being successfully criminally prosecuted, including Timothy Claridy, were a product of both (1) Officer Keith Gladstone, and (2) were still in a Federal Correctional Institution (FCI), the Federal Government, faces liability here as well for "Over-detention." While not completely ignoring the matter, the Federal Government did not reasonably and seasonably take actions to ensure Claridy as an individual would be released as soon as practical, but instead, he remained incarcerated despite his conviction being predicated on a former police officer's false testimony who had publicly plead guilty to a Felony of Conspiracy to Deprive of Civil Rights Guaranteed under the United States Constitution. This over-detention incarceration lasted, for at least an additional fourteen (14) months, and thus Plaintiff Claridy argues his incarceration was also an "over-detention" allowing separate liability against the United States, in these circumstances.

## JURISDICTION AND VENUE

10. Plaintiff Claridy hereby incorporates and restates Paragraphs 1 through 9 and further states as follows:

11. This Court has jurisdiction pursuant to its powers to resolve federal questions under 28 U.S.C. § 1331, 28 U.S.C. § 1343 and 28 U.S.C. § 1346 (Federal Torts Claim Act) (FTCA). This Court also has supplemental jurisdiction over any state law claims against the Defendants pursuant to 28 U.S.C. § 1367.

12. This action is brought pursuant to 42 U.S.C. §1983 and 42 U.S.C. §1985 to

redress the deprivation under color of law of Plaintiff Claridy's rights as secured by the United States Constitution, including the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.  Further action and damages include attorney's fees and costs, under 42 U.S.C. §1988.

13. This case is a "Hybrid" matter, both under the Federal Torts Claim Act against the United States and constituent agencies, employees, and agents, and a regular Civil Rights case against the remaining Defendants.  That portion of the matter being pursued under the FTCA is to be tried before a Federal District Court judge.   The remainder is sought to be addressed, to the maximum extent permissible,  through a Federal Jury Trial, against the Mayor and City Council of Baltimore, Baltimore City Police Department, and Defendant Keith Gladstone. In this case, Officer Keith Gladstone, had "two hats" of both a regular Baltimore City Police Officer, and a Federal Agent and Officer working as a sometimes "deputized" DEA Agent working in a "Joint Task Force."

14. The Plaintiff Claridy submitted an Administrative Complaint to the following agencies of (1) the Department of Justice (DOJ), including the constituent agencies of the   Federal Bureau of Investigation (FBI) and Bureau of Narcotics and Dangerous Drugs (BNDD), (2)  Drug Enforcement Administration (DEA), and (3) Office of National Drug Control Policy, High Impact Drug Trafficking Area (ONDCP-HIDTA) Program, within two years of his release from imprisonment on or about April 27, 2021.  Subsequently, written confirmation was received that the DOJ received the claim on April 14, 2023, and was "lead agency pursuant to

10

28 C.F.R. §14.2(b)."   It has been more than six (6) months since receipt of the Administrative by the United States of America, no "final disposition of the claims" have been received, and a suit against the Federal Government, constituent agencies (including those identified above), and employees and agents acting within the scope of their employment,  is therefore timely and proper.

15. Venue is proper in this Court and under 28 U.S.C. § 1391 (b) because the events arise in this complaint occurred in this judicial district, because all of the material events occurred in Baltimore City, Maryland in this district, and the amount in controversy exceeds $75,000.

## **PARTIES**

16. Plaintiff Claridy hereby incorporates and restates Paragraphs 1 through 15 and further states as follows:

17. Plaintiff Timothy Claridy, is a resident of Baltimore City, Maryland. He has authorized as a contact address in this litigation, service upon Plaintiff's counsel, located in Prince George's County, Maryland.

18. United States of America is the appropriate defendant under the Federal Tort Claims Act (FTCA).    Previously identifiable agencies of the United States, involved with this matter, include but are not limited to:

  a.  Department of Justice (DOJ),

  b.  Federal Bureau of Investigation (FBI),

  c.  Bureau of Narcotics and Dangerous Drugs (BNDD),

  d.  Drug Enforcement Administration (DEA), and

e. Office of National Drug Control Policy, High Impact Drug Trafficking Area (ONDCP-HIDTA) Program.

19. Defendant Detective Keith Gladstone is a former member of the BPD, and remained so through 2019.  With respect to Timothy Claridy, Officer Gladstone was also, at all times relevant to this action, employed by and acting under the control and supervision of the Defendant United States, specifically, but not limited to, as a DEA agent, working in conjunction with the Joint Federal and State Task Force, as part of the ONDCP-HIDTA Program.   In an indictment unsealed on March 6, 2019, Gladstone has previously been charged with, and later on or about May 13, 2019, plead guilty in Federal Court to, committing a felony violation of Civil Rights against 18 U.S.C. §241. He later testified as to other violations of Federal Civil Rights, in open Court in the criminal prosecution of Officer Robert Hankard. (Hankard was later convicted on all Counts in Federal Court in July 2022.) Gladstone is being sued in both his individual and official capacities.  He is being sued as well for the "two hats" of being both a Baltimore Police Department officer, and with respect to Plaintiff Claridy, also being a Federal Officer as part of his "duel" duties of being a deputized Drug Enforcement Administration Officer, including testifying falsely in that capacity.

20. Unknown Federal Officers, are officers who worked with Gladstone, not yet identified, involved in Arrest, Conviction, Detention, Policy, Incarceration, and Supervision of Officer Keith Gladstone, who at that time, was also Acting under the guise as an Authorized DEA Agent, as part of a Joint State-Federal Task Force.

12

Unknown Federal Officers may also include those involved in the "over-detention" of Plaintiff Tim Claridy.

21. Defendant Baltimore City is a body politic and corporate body that may sue and be sued in the name of the Mayor and City Counsel of Baltimore (hereinafter, "Baltimore City").  Baltimore City is a proper party defendant because Baltimore City in fact controls, in all material respects, the Baltimore Police Department. Baltimore City is responsible for the hiring, training,  retention, supervision, discipline and funding of the Baltimore Police Department and its leadership, as well as all of the individual officers whose conduct is at issue here.  All of the considerations taken into account in identifying an "employer" or otherwise resolving Respondeat superior liability weigh in favor of also holding Baltimore City liable for the misdeeds of its police officers

22. Defendant Baltimore City Police Department (hereinafter "BPD" or "Department") is an agency of the State of Maryland and considered a proper party for suit and liability for Federal and State violations.   BPD employs or has employed each of the individual Defendants in this case and is a "person" within the meaning of 42 U.S.C. §1983.

23. At all times relevant herein, Defendant Gladstone, while also acting within the scope of his employment as a Federal Agent, was also an employee of the BPD, having committed the acts and omissions described herein under color of the law and within the scope of their employment, including but not limited to, having secured information to support the arrest, even while the case ultimately was tried

13

in Federal Court.  Throughout the arrest and original false testimony, Gladstone was permitted to stress his "dual" agency employment at that time, though primarily testified in Federal Court as a DEA Officer.

## FACTUAL SUMMARY

24. Plaintiff Claridy hereby incorporates and restates by reference, Paragraphs 1 through 23, particularly the descriptions and hyperlinks included in Paragraph 3, and further states as follows:

25. Mr. Keith Gladstone was a Baltimore City Detective, who was made part of a "Joint" Federal/State Task, acting at least in part as a DEA agent, as part of the HIDTA Program in Baltimore.   On or about March 6, 2019, as part of the unsealing of a Federal indictment, it was first publicly disclosed that Officer Gladstone was a dirty cop, who had taken advantage of Baltimore citizens for decades, and regularly would, through artifice and deceit, lie and fabricate in reports, manufacture "confidential" informants, steal when convenient, and subsequently arrest and help prosecute individuals like Mr. Claridy, in violation of their constitutional rights, to secure his role as a "productive" police Detective.

26. At the time of the Mr. Claridy's arrest and prosecution, Keith Gladstone was acting both as a Baltimore Police Officer and a Federal Agent acting under the scope of a "Task Force Officer of the Drug Enforcement Administration" among other things, seeking search warrants with both state and Federal Judges.  He also testified as an "expert witness" for the Federal Government, due to his claimed tens of thousands of drug trade interactions.   For Claridy's particular trial,

14

Gladstone "worked on a DEA task force, assigned to HIDTA Group 54. HIDTA standing for High Intensity Drug Trafficking Area Group. And what we specifically worked on wholesale distributors of narcotics in this Baltimore metropolitan area." Transcript, pg. 56, 6/30/2008.

27. While the vast majority of these unconstitutionally derived cases and prosecutions occurred in the State of Maryland court system related to the now disgraced "Gun Trace Task Force" (GTTF) officers, and a substantial number included former Officer Gladstone, there was a much smaller number of prosecutions tracing to his "high profile" work as a Federal agent. *See also,* Fenton, Justin, "Federal Public Defenders Target Convicted Baltimore Police Seargeant's Cases; Four More Officer's Suspended," The Baltimore Sun, March 6, 2020 (Noting only four cases of the presently incarcerated criminal defendants in Federal Court, including Plaintiff Claridy's 20 year incarceration sentence, tracing to corrupt GTTF squad officers including Gladstone)

28. As the Fourth Circuit published appellate decision in *Claridy* explains, at least in retrospect, this was not a case where Mr. Claridy did anything wrong, to justify his unconstitutional arrest and incarceration based on the Federal Government's reliance of a corrupt cop. *See United States v. Claridy,* 601 F.3d 276 (4th Cir. 2010). As briefly expounded here, Mr. Claridy, through counsel, tried to argue and explain he was a victim here of a dirty officer, Keith Gladstone. He did not plead guilty, but instead was convicted by a Federal Jury, after this jury was fed various lies by Officer Gladstone, the only officer who testified in Court as to the claimed

15

inculpatory "admission" of Mr. Claridy on the weapon being located in a house, and sentenced to 20 years incarceration in Federal prison by Judge Richard Bennett As the Defense counsel noted in their opening statement, "[t]he evidence in this case […] is very troubling.  Essentially, this case is all about Detective Gladstone…and there's really nothing to back up or corroborate any of that evidence."  Transcript, pg. 46, 6/30/2008.

29. Though the *Claridy* Opinion focused on the nuanced technical argument of whether the search should have been suppressed based on FRCrP 41(b) and applicable Statutes, and Officer Gladstone's distinct and direct role in this case, as a "federally deputized Baltimore City police officer, participating in a joint task force," there is now sufficient information, at the very least, to overwhelmingly support that Mr. Claridy was a victim here, who suffered the indignity of being falsely arrested, imprisoned, and prosecuted.  Under the Fourth Circuit's *United States v. Fisher,* 711 F.3d 460 (4th Cir. 2013), Mr. Claridy remains an excellent candidate for relief of a vacatur of his sentence, due to the selected key Government witness of Keith Gladstone, *inter alia* acting within the scope of the authority granted by all the agencies listed above as part of the Federal/State task force, getting a conviction in violation of Mr. Claridy's constitutional rights, including due process rights.

30. However, the method of relief for this, is made complicated by the lack of the same "vacatur" legislation passed in Maryland, to address the fallout of the GTTF scandal, and provide a clear remedy for the handful of federal victims, like Mr.

Claridy   So even though Mr. Claridy had no significant medical issues, in order for him to be released on April 27, 2021, the Government agreed to a "Compassionate Release" remedy only.  With all due respect, the United States Government dragged their heels, for well over a year, in not releasing Mr. Claridy sooner.  Whatever you call it, Mr. Claridy was released because the Government's case, was based upon the testimony of now disgraced former Officer Keith Gladstone, who until recently, was serving time in a Federal penitentiary, for Civil Rights violations.  Under the Supreme Court's recent decision of *Thompson v. Clark,* 142 S.Ct. 1332 (April 4, 2022), does not require a strict *nol pross* to make out a Malicious Prosecution claim under 24 U.S.C. § 1983, no reasonable fact finder will seriously contest that Mr. Claridy was released because of the violations of civil rights against him caused by the Federal Government's agent in this case, Officer Keith Gladstone.  There is also the argument, that the Federal Government, should have remedied Mr. Claridy's incarceration, at a much earlier time period than April 27, 2021, especially after the indictment of Keith Gladstone, was made public, on or about March 6, 2019.

31. The Federal Government, should have also known something was amiss in relying upon Officer Gladstone, to shepherd their prosecution of Mr. Claridy.  This case involves questionable and shady searches and activities, that were transformed and "cleaned" to justify the questionable search, seizure, and arrest, via improper practices and misconduct, all done in violation of Mr. Claridy's Civil Rights.  These activities, were conducted by the Task Force officers involved with the 69

Stemmers Run Road residence.  It was par for the course then, for the same officers, to pro-actively and  *post facto* justify the illegal searches and seizures.  *See e.g.* "U.S. Judge Rebukes City Police After Rejecting Evidence," <u>The Baltimore Sun</u>, March 10, 2003 ("[Federal Judge Andre Davis noting] "They are not making cases. They're not building investigations.  And I saw that with all due respect to Detective [Keith] Gladstone [seated in Court].  They are just making arrests. They are just making seizures.")

32. What Officer Gladstone did, was what he has now admitted doing scores of time, for decades, along with other officers in the BPD and GTTF, were these "**sneak and peeks.**"  They would search a residence *first,* and then get warrants, and/or make up "inculpatory statements," all tidied up later with false police reports.  *See e.g., Baltimore City Police Dep't v. Potts*, 468 Md. 265 (2020)(Discussing some of these false statement practices, and addressing as a matter of Maryland law, the Governmental entity of Baltimore can be held liable for the acts of their agents, even if illegal, so long as done more broadly, was part of and/or in advance of the overall goals of the supervising governmental authorities to unconstitutionally arrest and incarcerate).[4]

---

[4] The Maryland Supreme Court, in *Potts* the sole precedent involving victims of the GTTF, unanimously held the GTTF Defendants were within the scope of their employment, and thus the Baltimore City Police Department/Baltimore City was responsible to indemnify their employees taken within the scope of their employment.  As noted *infra* and *supra,* Gladstone's work in the Task Force, (despite the "producer" aspects accomplished primarily via unconstitutional means, and being tolerated on numerous levels of governmental oversight according to the <u>Bromwich Report)</u> allowed Baltimore to obtain Federal Grant funds for the work done.  The vast majority which were prosecuted and

33. According to the <u>Bromwich Report,</u> at page 385-386, the exact type of corrupt and unconstitutional behavior used to incarcerate Plaintiff Claridy, was commonly done by Defendant Gladstone.

> [Officer] Rivera reported that Knoerlein and Gladstone engaged in corrupt activities "According to Rivera, both Gladstone and Knoerlein repeatedly conducted warrantless searches at the residences of targeted suspects. Rivera said Gladstone also employed "parking lot capers"— a surveillance tactic where officers staked out parking lots where they thought substantial drug transactions would occur, *even when they had no specific and actionable information that such conduct would take place.* According to Rivera, once officers observed two cars pull close to each other, the officers would detain a suspect, take the arrestee's keys, travel to his house, and execute a sneak and peek of the residence. *Once detained, Gladstone would access an DEA database—which he originally gained access to via his task force assignments.* Rivera said that he and Gladstone often falsely claimed in warrant applications that a drug transaction had occurred in the parking lot when they had observed no such transaction.
>
> Rivera told us that he, Jenkins, Knoerlein, Louvado, and Craig Jester engaged in this practice with Gladstone on numerous occasions while working in Eastside 6. Most often, Louvado or Jenkins conducted the warrantless searches with Gladstone, while either Rivera, Knoerlein, or Jester waited with the arrestee. *The objective of the preliminary illegal search, according to Rivera, was to determine whether there were drugs or cash in the hom*e such that it would be worth obtaining a warrant to enter the residence. Rivera alleged that Gladstone and the other officers often stole some of the money in the residence."

34. The "historicity" of the motivations involved Baltimore Officers like Gladstone, not considering it "corrupt" to make misrepresentations of facts, to *post hac* justify their

---

arrested in State Court; Claridy's however, was eventually prosecuted in Federal Court, where he was eventually convicted.  No decision appears to have been voluntarily reached, as of today, that Gladstone was *also* acting within the scope of his authority under the Federal Tort Claims Act, although applying State law, this appears to be beyond question, especially given the prosecution in Federal Court of Claridy.

arrests and convictions; quite the opposite, these would be rewarded, in the "see no evil, here no evil" corruption involved, since *before* the time of Claridy's arrest and conviction in 2007. As identified in the Executive Summary, with a summary at Page viii and quoted directly from Page xxvi:

> "A common form of corruption, which was *not universally perceived by officers as inherently wrong,* was making misrepresentations of fact to support law enforcement actions such as stops, arrests, and searches. *Such misrepresentations were designed to mask the identity of informants, shield supervisors from needing to testify in court, and/or provide the extra pieces of information necessary to justify officers' actions.* This category of misconduct took various forms. The BPD officer would falsely represent that an observation or set of observations had been made by the officer himself rather than by the supervisor or informant. Or the officer would fabricate the observation entirely. The falsehood would then be *perpetuated through false testimony, if necessary, that would be consistent with the inaccurate written accounts of what had happened.* One of the GTTF defendants, Maurice Ward, said that his own corruption started with such falsification of reports.
>
> Our investigation demonstrated that this type of corruption was casual, routine, and pervasive—and carried with it no consequences. *BPD members focused on the outcome—the arrest of someone they believed to be guilty—rather than the dubious means they used to achieve it.* Neither O'Malley nor Norris was under any illusion about the existence of corruption within BPD. O'Malley's mayoral campaign platform included a commitment to "police the police" to deal with corruption and misconduct that were already occurring, as well as the type of misconduct that could result from the more aggressive style of policing he sought to implement. In April 2000, O'Malley and Norris published the results of a broad review of BPD operations conducted by New York-based consultants, which included the results of a survey that included questions about the existence of corruption in BPD. Responses to the survey revealed that nearly one out of every four BPD members believed that as many as 25% of their fellow BPD members were engaged in stealing money or drugs from drug dealers—a stunning result. Presumably, if the definition of corruption had been expanded to include *misrepresentations and lies in official police documents, which was common at the time, the number would have been even higher."* [Emphasis Added]

35. The City and BPD both had particular monetary benefits, in making use of the

"Partnership Agreement" with the DEA, and knew or should have known, the "access"

created from the DEA work, by corrupt cops, would end up benefitting the appearance

that individuals were being criminally apprehended, in violation of Constitutional and

Due Process safeguards, even when based on nothing more than a hunch, and often not

even that.  At Page 90, the Bromwich Report noted

"According to [Police Commissioner from 2005-2007 Leonard] Hamm, an important aspect of BPD's retooled crime strategy was forging better relationships with federal and state law enforcement agencies. Hamm  recalled that prior to his arrival, BPD did not have any meaningful partnerships—he blamed Clark for badly damaging them. *Hamm recalled going to these agencies, hat in hand, apologizing for the state of those relationships. BPD's strategy, formulated by  Hamm and Brown, included placing plainclothes BPD officers in task forces with federal and state partners, which allowed BPD officers to conduct investigative and enforcement activities outside the city limits. As part of a partnership agreement with  the Drug Enforcement Administration (DEA), BPD received 70% of the proceeds from seizures and forfeitures, with DEA receiving 30%.* […] At the meeting, according to Jessamy, *Hamm acknowledged that BPD was arresting people without probable cause* and claimed that BPD received its marching orders from O'Malley."

36.  Nor was this criminal and unconstitutional behavior, which led to the 14 years of

wrongful imprisonment of Plaintiff Claridy, somehow unpredictable by the

Defendants.  Quite the opposite.   The United States of America, City of

Baltimore, and BPD, all well knew this was ongoing, *and had specific knowledge*

tracing back to at least January 15, 2003, in the *United States v. Weaver case,* that

Officer Gladstone was a ringleader for this misconduct.[5] As noted in Pages 62-64

---

[5] A parallel to the misconduct involved here, involves the eventual over $100 Million dollar FTCA verdict upheld in the First Circuit Court of Appeals, in *Limone, et. al. v. United States,* 579. F.3d 79 (1st Cir. 2009),  of "egregious governmental misconduct" involving using corrupt informants, to which "the end did not justify the government's use of very unattractive means.  In its zeal to accomplish a worthwhile objective (stamping out

of the <u>Bromwich Report</u>, titled "Police Misconduct and the Judiciary":

"By the time Clark became BPD Commissioner, the police misconduct associated with aggressive narcotics enforcement practices by BPD officers was being revealed in local and federal courts in and around Baltimore. On January 15, 2003, several weeks before Clark took over as BPD Commissioner, the Honorable Andre Davis presided over a suppression hearing in the case of *United States v. Weaver* in the United States District Court for the District of Maryland. The case centered on events surrounding the arrest of the defendant, Mason Weaver, and the search of his apartment in Northeast Baltimore on October 9, 2002. The search yielded both a significant amount of heroin and more than $ 3,000 in cash. The principal officer involved in the arrest and search was Thomas Wilson III; *a second member of the team was Keith Gladstone.*

At the suppression hearing before Judge Davis, *both Wilson and Gladstone testified about the factual predicate for their investigation, the observations and information that led to the defendant's arrest, and the search of Weaver's residence pursuant to a warrant obtained from a Baltimore City judge*. After a two-day hearing, Judge Davis suppressed the evidence seized from Weaver's apartment and delivered a withering attack on the conduct of *Wilson, Gladstone, and their BPD colleagues.*

"Now, I will be glad to hear [government counsel], but I must tell you that in 15½ years of conducting suppression hearings, I have never, ever encountered a situation in which not only did the government's witness contradict the Statement of Charges, which is under oath; not only did the government witness contradict the Warrant Affidavit, which is under oath; not only did the government witness contradict himself on the stand while  under oath; but the second government witness contradicted the first government witness. I have never heard of that, I have never seen that, and I am anxious to hear [government counsel] argue it."
 [...]
And even now, as [Commissioner Norris has] moved on, in October of 2002, Baltimore City police  officers are still not making cases. They are not out there working for people like [the prosecutor], to make [his] job a job that he can do well. *They  are not making cases. They're not building investigations. And I say that with all respect to Detective Gladstone. They are just making arrests. They are just making seizures."*

organized crime), the FBI stooped too low.  Its misconduct was not only outrageous but also tortious.  That misconduct resulted in severe harm to the persons wrongfully convicted and to their families.  Under these unfortunate circumstances, the large damage awards mark the last word of a sad chapter in the annals of federal law enforcement."

[…]

The strength of Judge Davis's denunciation of the conduct of the officers in the Weaver case was explained in part because he had recently adjudicated another case that bore some of the same indicia of police misconduct. In that case, he characterized the BPD officers as follows:

*They're fumbling and bumbling, and they don't understand the law. They don't understand the Constitution. They don't understand the limits that the law places upon them.*

*Judge Davis's criticism was so withering that the US Attorney's Office (USAO) took the extraordinary step of asking him to soften his criticism of BPD.*
[…]

Davis believed that the war on drugs, being fought in Baltimore and around the country, was spawning a corrosive drug war exception to the Fourth and Fifth Amendments. He blamed appellate courts' "unthinking, regressive approach to law enforcement," which caused them to overlook and excuse misconduct by police officers and to weaken probable cause standards. In addition, the war on drugs and accompanying civil forfeiture statutes provided strong incentives for police officers to search for and seize money.

Davis was so troubled by his experiences in cases involving false and misleading statements by BPD officers, in search warrant applications and in sworn courtroom testimony, that he contacted Kevin Clark. According to Clark, Davis sent him copies of BPD search warrant applications that reflected a practice of cutting and pasting information from one search warrant affidavit to another. Davis told Clark he needed to "fix it." *As for Wilson and Gladstone, Judge Davis's grant of the motion to suppress and his sharp criticism of the search warrant affidavit and their suppression hearing testimony as false and misleading led to Internal Affairs (IA) referrals. Wilson was found guilty at a trial board; he was docked five days of leave and was ordered to take a class in search and seizure. Gladstone was not sanctioned."* [Emphasis Added]

37. Taking advantage of the "prestige" and additional reputational and functional access provided, Gladstone had become ingratiated into these "task force squad[s]," long before the GTTF was formed.   Despite warnings and foreknowledge of these concerns, essentially allowed Gladstone and co-

Defendants to get arrests and prosecutions that were not warranted, without probable cause, and unconstitutional. As noted in the <u>Bromwich Report,</u> on page 423, this Federal "task force work" began at least by 1998, nine years prior to the wrongful search, arrest, and conviction of Plaintiff Claridy.  The BPD and City obtained funding and made Gladstone the other jurisdictions' 'problem' should he be caught.  (Which he wasn't criminally cornered until the much later Federal criminal investigation).

38. In Claridy's case, Gladstone described his role at the time, in questioning by Attorney Bates, as having worked for BPD for 15 years, for the "HIDTA Task Force" "for six years on and off" and mentioned he stopped working there a month earlier (but not the reasons) and that he was  a "deputized" as a Federal Officer as part of [the] HIDTA Task Force" specifically working for the "Drug Enforcement Administration."  Tr. 12/17/2007, Pg 9-11.

39. By some accounts, this was not fully known at the beginning of the "Federal Task Force work" in 1998, but by the time of Claridy's arrest, prosecution, and sole direct evidence testimony by Gladstone that led to his fourteen years incarceration, Gladstone was generally perceived by BPD as "the biggest liar" and "intensely disliked" according to his HIDTA Task Force colleagues.  Some of these matters, were disclosed and not presently public through Defendant Gladstone's "Personnel file" (repeatedly cited in footnotes on Pages 381-390 of the Report, provided by BPD, and viewed by Report Author Michael Bromwich for the 660-Page Task Force Report, and would be sought in any discovery in this

24

case.)   Per the <u>Bromwich Report</u> at Pages 383-385:

"[...]In July 1998, BPD transferred Gladstone to a High Intensity Drug Trafficking Area (HIDTA) task force squad, where he worked for approximately three years. Gladstone's participation in several drug-related investigations on this squad cemented his reputation as an accomplished narcotics cop. Witnesses we interviewed were generally complimentary about Gladstone, describing him variously as "one of the best cops" at BPD, who had achieved "legend status" and had an "impeccable" reputation. A supervisor during this period also observed that Gladstone "brought with him a cadre of informants that provided information which resulted in numerous arrests and large seizure[s] of CDS [controlled or dangerous substances] and currency.

In July 2001, BPD transferred Gladstone to the Drug Enforcement Section of the Criminal Investigation Bureau and in September 2002, to another drug enforcement squad, under the supervision of Knoerlein. Gladstone worked under Knoerlein until May 2003. Knoerlein praised Gladstone's investigative techniques, and noted that Gladstone had "a great working relationship with the US Attorney's Office," which resulted in many of his cases being federally prosecuted.

On September 27, 2002, a BPD detective relayed to IA allegations of misconduct against Gladstone made by an informant. [...] Following an investigation, IA rendered a sustained finding for neglect of duty because Gladstone had failed to follow procedures related to the seized currency. IA accepted Gladstone's representation that he had seized only $2,406 from the informant, and that he had returned all of the money to the informant the next day. BPD Legal Affairs recommended a reprimand and four-day suspension, but Gladstone ultimately received only the reprimand.

Shortly after this incident, and as described in Chapter IV, Section C, Gladstone's credibility was publicly questioned by then-federal Judge Andre Davis after Gladstone testified at a suppression hearing relating to a search warrant obtained after a warrantless search of Mason Weaver's home. Judge Davis noted that Gladstone spent three hours trying to "clean . . . up" testimony of another officer, and characterized "the  entire scenario painted by [the detectives as] . . . implausible." As a result, Judge Davis found that Weaver's constitutional rights had been violated, and dismissed the case. Following the hearing, Weaver reported the conduct to IA, and claimed that Gladstone had testified falsely during the suppression hearing. *Although IA sustained findings against the officer who prepared the warrant, it did not sustain a finding that Gladstone had lied during his testimony.*

**DEA HIDTA Group (2005-2007)**

25

Following two years in various Northwestern District squads, i*n February 2005, BPD transferred Gladstone to HIDTA Group 54, a DEA-BPD task force group.* According to former BPD Major John Hess, former Deputy Commissioners Marcus Brown and Anthony Romano arranged for Gladstone's transfer to this group. *While serving in Group 54, Gladstone led an investigation that resulted in a major drug seizure.*

*BPD transferred Gladstone out of HIDTA in November 2007. According to several BPD members, the DEA in fact expelled Gladstone from the HIDTA task force after surveillance cameras caught Gladstone releasing the air from the tires of a DEA agent's car after an altercation between Gladstone and the agent.* Additionally, we learned that while Gladstone maintained an excellent reputation at BPD, outside agencies held largely negative views of him. *For example, Hensley recalled that the Baltimore County Police Department "hated Gladstone because they thought he was the biggest liar . . . and a cruddy cop." Michael Newton, who first met Gladstone while working in HIDTA, recalled learning that the Maryland State Police and Baltimore County Police intensely disliked working with Gladstone*."  [Emphasis Added]

40. The case agent, Officer Keith Gladstone, acted as the star witness for the prosecution. At trial, it was noted by the defense in both opening and closing the prosecution's entire case rests on Detective Gladstone. In addition to being the main witness, Officer Gladstone authored the search warrant applications and police reports in this case.  He was the sole testifying witness who "connected" Claridy with the alleged later search and recovery of a gun and involvement with the heroin located at the same location of Stemmers Run.  He did this by saying Claridy "refused" to cooperate with the investigation, until completely uncorroborated at trial, suddenly admitted to having a gun near heroin that was located at 69 Stemmers Run Road.

41. Benjamin Franklin, Framer and Founder, addressed the Proverb of "For want

of a nail" in his <u>Poor Richard's Almanac,</u> as follows.

> "A little neglect may breed mischief ...
> for want of a nail, the shoe was lost;
> for want of a shoe the horse was lost;
> and for want of a horse the rider was lost.
>
> <u>Benjamin Franklin</u>
> *Poor Richard's Almanack*, preface (1758)

This was a "want of a nail" prosecution and case, or to use another metaphor, it was premised on a "house of cards," that had a solitary stick to hold it up. Disgraced Officer Keith Gladstone. Even leaving aside this is a quintessential example of the "sneak and peek" usage, while completely unconstitutional, was a common occurrence for Gladstone and BPD officers, the particular prosecution of Claridy, was for "want of a nail"—but for the false reports and uncorroborated testimony given by Gladstone, *Claridy admitted,* the gun near the heroin was his—in a residence that a lot of people had access to, there would have been no prosecution, particularly Federal prosecution, and particularly not for the 20 years under the Draconian sentencing guidelines that existed for Mr. Claridy.

42. Rather than admit to something he didn't do, and which he was innocent of, Plaintiff Claridy, instead, risked going to trial in Federal Court.  After the jury verdict found him guilty on the Counts related to heroin and it being his gun (having been prohibited previously from possessing a firearm), Mr. Claridy was sentenced to twenty years incarceration by Judge Richard Bennett.  He was only released slightly early from Federal Imprisonment on or about April 27, 2021.

43.   Unfortunately, though based on the what has become first public since 2019, it has been proven beyond all doubt, Defendant Gladstone, working for and with the co-Defendants, was crooked, this doesn't get Mr. Claridy his fourteen years back.   And respectfully, this wasn't "a little neglect [that] may breed mischief" Franklin warned about.  There was no case, and particularly, significant winnable case against Claridy, *but for,* the alleged inculpatory statement testimony given by Officer Gladstone.   That wasn't neglect, it was intentional, and it was malicious.  Gladstone was acting under the scope of his ""dual"" employment, in this Joint State and Federal Task Force.  And, the other co-Defendants knew about Gladstone's propensities, at least with a deliberate indifference, but failed to heed red flags and warnings, that were evident at the latest by 2003.

## CAUSES OF ACTION

### Count I:

**42 U.S.C. Section 1983 – Malicious Prosecution, Malicious Use of Process, Unlawful Search and Seizure, Intimidation, False Arrest, False Imprisonment, Civil Rights Violations, Civil Conspiracy, Aider & Abettor Liability, Retaliation, Supervisory Liability, Failure to Supervise, Intentional Infliction of Emotional Distress, Negligent Hiring, Negligent Training, Negligent Retention, Unconstitutional Customs and Practices under *Monell*, and Violations of 4th and 14th Amendments to the United States Constitution**
**(All Defendants, with Exception *Monell* Claim Only Applies to Defendants United States of America, Baltimore City and Baltimore City Police Department)**

44. Plaintiff  Claridy  hereby  incorporates  and  restates  Paragraphs  1  through  42 (including  the  Attached  <u>Bromwich  Report</u>   and  incorporated  hyperlink  in Paragraph 2), and further states as follows:

28

45. As described above, Defendants while acting individually, jointly, and/or in concert, under color of law and within the scope of their employment, committed various Civil Rights violations, directly and/or as a matter of willful indifference.

46. Plaintiff suffered injury and damage as a result of the false search, false arrest, and false imprisonment.   These were unlawful and unreasonable because probable cause did not exist to believe that the Plaintiff had committed any criminal acts, and done for retaliatory and intimidation purposes.

47. Plaintiff also suffered the following injuries and damages arising under the United States Constitution.

   a.  Violation of constitutional rights under the Fourth Amendment to the United States Constitution to be free from unreasonable search and seizure;
   b.  Violation of constitutional rights of due process of law under the Fifth Amendment to the United States Constitution;
   c.  Violation of constitutional rights under the Fourteenth Amendment to due process of law, and equal protection of law, as applied to the States.
   d.  Mental anguish, emotional pain and suffering, humiliation, anxiety, worry, injury to health, loss of time, and damage to reputation, as well as other direct economic losses in the form of lost wages, and other compensatory damages.

48. The actions of the Defendants violated the clearly established and well-settled federal constitutional rights of the Plaintiff Timothy Claridy, including as follows.

   a.  Freedom from unreasonable searches and seizures of his person and personal property;
   b.  Freedom from searches and seizures of person and personal property without probable cause;
   c.  Freedom from prosecution of criminal charges lacking probable cause to support them;
   d.  Freedom from prosecution of criminal charges as retaliation for and

defeat the possibility of administrative review of police misconduct;

e.  By deliberately failing to disclose the foregoing misconduct, the Defendants violated their clearly established duty to report all material exculpatory and impeachment information to prosecutors;

f.  Without the Defendants' misconduct, the prosecution of Timothy Claridy could not and would not have been pursued and/or would have failed.   This resulted in the unjust and wrongful incarceration of Plaintiff Claridy, in violation of the Due Process Clauses of both the Fifth Amendment and the Fourteenth Amendment to the United States Constitution.

49. Defendant Officers conducted these intrusions in a callous and intimidating manner without any legal justification.  Because it would adversely impact the group of officers charged by BPD with conducting these unconstitutional actions on Baltimore citizens, various policies were adopted and/or condoned, to prevent interference.

a.  Defendants would seek to prevaricate and lie, in Reports and under oath testimony, to avert and/or justify later challenges to illegal and unconstitutional actions undertaken by the Defendant Officers and employers.

b.  Defendants, with malicious intent and/or with deliberate indifference, would target those Baltimore City residents with previous criminal records and/or on probation.

c.  Defendants were permitted to illegally stop, detain, search, and seize persons.

d.  Defendants were permitted to use fabricated evidence to support unconstitutional stops and seizures, and avoid the disclosure or suppression of exculpatory and/or impeachment evidence in Court.

e.  Defendants were permitted the use false police reports, statements of probable cause, and their use in search warrants, to support unconstitutional stops and seizures, as well as avoid the disclosure or suppression of exculpatory and/or impeachment evidence in Court.

49.  The Officer Defendant's actions were undertaken pursuant to custom and usage and/or policies and practices of the United States, Baltimore Police Department, and City,

were condoned and/or ratified by policymakers with final policymaking authority, including those within the United States of America Federal/State Joint HIDTA Task force and related agencies. These policies and practices were sufficiently widespread within the Defendants to assume the quality of a "custom or usage" of which policymakers had actual or constructive knowledge.   The policies and practices described herein were maintained and implemented with deliberate indifference to Plaintiff's constitutional rights.

50.   Prior to and at the time of the events at issue, the United States, BPD, and City by and through its final policymakers, maintained a policy, custom, pattern, or practice of failing to adequately supervise, discipline, and train members of its plainclothes units with respect to their constitutional obligations.

51.   The misconduct described herein was undertaken with malicious intent and willful indifference to the clearly established constitutional rights of Timothy Claridy, and other citizens of Baltimore.

52.   Additionally, Defendants who did not directly participate in the illegal and unconstitutional actions of other Defendant Officers, including Gladstone, permitted and tolerated "casual corruption" to occur on their watch.   To the extent any Defendants in a supervisory role did not act, they nevertheless had a duty to act, and a reasonable opportunity to prevent this harm but failed to do so.

53. As described above, by their conduct and under color of law, the Defendants , failed

to intervene to prevent the violation of Timothy Claridy's constitutional rights, even though they had ample opportunity to do so.

54. As described above, when notified about Defendant Gladstone's guilty plea to Civil Rights violations, the United States of America, failed to adequately provide relief to the written request for Section 2255 relief, filed a few months later in February 2020. Citing the existing precedent of *United States v. Fisher,* 711 F.3d 460 (4th Cir. 2013), Claridy's Federal Public Defender timely and in detail sought relief.  However, it is contended that there was an at least fourteen (14) month "over-detention" here when the facts of Claridy's trial was premised entirely upon the "but for" causality link provided solely by Defendant Gladstone, who was being prosecuted by members of the Department of Justice. [6]

55. Defendants had actual or constructive knowledge that Defendant Gladstone was engaged in widespread misconduct over a period of years that posed an unreasonable risk of constitutional injury to Plaintiff and other citizens of Baltimore.

---

[6]  This is also consistent with the Supreme Court of Maryland's holding in *Prince George's Cty. v. Longtin*, 419 Md. 450, 496-97 (2011) finding an unconstitutional deprivation when the arresting officers receive DNA evidence of the incarcerated Defendant's innocence, yet take few actions to actually and timely bring the matter to the Court's attention.  ("The Defendants' argument is unconvincing, and almost incoherent. Longtin clearly introduced evidence of unconstitutional  actions committed *against him*. He called as witnesses his interrogating officers and elicited testimony regarding the illegal actions they took in arresting and interrogating him [Involving lengthy sleep deprivation techniques]. *He introduced evidence about the exculpatory DNA tests, and established that the officers did little, if anything, after learning he was excluded*. This evidence was sufficient to support a verdict of constitutional deprivation in his case.") [Emphasis Added]

56. Despite this knowledge, Defendants took no action to prevent or remedy the misconduct by Officer Gladstone. They were deliberately indifferent to the persistent constitutional violations by Gladstone whom they directly supervised. They routinely failed to supervise and discipline Gladstone, thus allowing the misconduct to continue and thrive.

57. As a direct and proximate result of the tortious actions and constitutional violations of the Defendants, taken with malicious intent and willful indifference, Plaintiff Timothy Claridy had and continues to have injuries, including but not limited to loss of liberty, physical injury, lost wages, lost time with loved ones, legal costs and fees, mental anguish, emotional pain and suffering, humiliation, anxiety, worry, injury to health, loss of time, and damage to reputation, and other compensatory damages.

## Count II

**42 U.S.C. Section 1985 – Conspiracy— Malicious Prosecution, Malicious Use of Process, Unlawful Search and Seizure, Intimidation, False Arrest, False Imprisonment, Civil Rights Violations, Civil Conspiracy, Aider & Abettor Liability, Retaliation, Supervisory Liability, Failure to Supervise, Intentional Infliction of Emotional Distress, Negligent Hiring, Negligent Training, Negligent Retention, Unconstitutional Customs and Practices under *Monell*, and Violations of 4th and 14th Amendments to the United States Constitution**
**(All Defendants, with Exception *Monell* Claim Only Applies to Defendants United States, Mayor and City Council, and Baltimore City Police Department)**

58. Plaintiff Claridy hereby incorporates and restates Paragraphs 1 through 57 (including Paragraph 2, the Attached and Incorporated Bromwich Report, and the incorporated hyperlinks), and further states as follows:

59. As described above, Defendant acted in concert, and conspired to accomplish

33

an unlawful purpose by unlawful means.

60. In furtherance of this conspiracy, the Defendants engaged in and facilitated numerous unlawful acts, including, but not limited to, fabricating evidence and committing perjury in statements of probable cause, committing perjury in grand jury proceedings, and were otherwise willful participants in the joint activity.

61. The misconduct described herein was undertaken with malicious intent and willful indifference to Plaintiff's clearly established constitutional rights. Defendants' misconduct, particularly with respect to Officers Gladstone, who were criminal prosecuted, obstructed the administration of justice in federal and state courts and was motivated by an attempt to deprive Plaintiff of due process and the equal protection of the laws.

62. As a direct and proximate result of the tortious actions and constitutional violations of the Defendants, taken with malicious intent and willful indifference, Plaintiff Timothy Claridy had and continues to have injuries, including but not limited to loss of liberty, physical injury, lost wages, lost time with loved ones, legal costs and fees, mental anguish, emotional pain and suffering, humiliation, anxiety, worry, injury to health, loss of time, and damage to reputation, and other compensatory damages.

**Count III**
**42. U.S.C. Section 1988-Proceedings in Vindication of Civil Rights**

63. Plaintiff Claridy hereby incorporates and restates by reference, Paragraphs 1 through 62, and further states as follows:

64. The actions and activities of Defendant Officers, and Defendant BPD, directly and via conspiracy in violation of the Civil Rights Act of 1871, created a panoply of complicated related legal work, encompassing various federal litigation in this matter. All this work was done to fully vindicate Plaintiff Claridy's constitutional and tortious injuries created by the Civil Rights violations of Defendants.

65. As a direct and proximate result of the tortious actions and constitutional violations of the Defendants, taken with malicious intent and willful indifference, Plaintiff Timothy Claridy had and continues to have injuries, including but not limited to loss of liberty, physical injury, lost wages, lost time with loved ones, legal costs and fees, mental anguish, emotional pain and suffering, humiliation, anxiety, worry, injury to health, loss of time, and damage to reputation, and other compensatory damages.

66. As part of vindicating these rights, Plaintiff Timothy Claridy and his counsel, seek "reasonable attorneys fees as part of the costs" in the action herein.

**Count IV:**
**(Violation of Maryland Declaration of Rights, Article 24)**
**(All Defendants)**

67. Plaintiff Claridy hereby incorporates and restates by reference, Paragraphs 1 through 66, and further states as follows:

68. As discussed and described above, Defendants deprived Plaintiff Claridy of

the rights, privileges and immunities guaranteed under Article 24 of the Maryland Declaration of Rights, in violation of due process, including by planting and fabricating evidence, false police reports, and false statements of probable case, leading to Plaintiff Claridy's wrongful imprisonment for fourteen years, for crimes he did not commit, and which Defendant Officers knew or should have known he did not commit and/or were procured by unconstitutional actions.

69.    As a direct and proximate result of the tortious actions and constitutional violations of the Defendants, taken with malicious intent and willful indifference, Plaintiff Timothy Claridy had and continues to have injuries, including but not limited to loss of liberty, physical injury, lost wages, lost time with loved ones, legal costs and fees, mental anguish, emotional pain and suffering, humiliation, anxiety, worry, injury to health, loss of time, and damage to reputation, and other compensatory damages.

**Count V:**
**(Malicious Prosecution)**
**(All Defendants)**

70.    Plaintiff Claridy hereby incorporates and restates by reference, Paragraphs 1 through 70, and further states as follows:

71.    Defendants instituted criminal proceedings against Plaintiff Timothy Claridy, without probable cause and with specific and actual malice towards the Plaintiff. Ultimately, after uncertainty if the case would be pursued by State or Federal authorities as part of the Joint State/Federal Task Force, the case was prosecuted

36

in Federal Court in *United States v. Timothy Claridy,* 1:07-cr-00244-RDB-1, resulting in a twenty year (240 month) prison sentence.

72.     After a lengthy Second § 2255 was filed by the Federal Public Defender's office, in 2020, a few months after discovering Gladstone's guilty plea to Federal Civil Rights violations, and the entire lack of evidence involved with the Defendants' prosecution was based on Defendant Gladstone's testimony and actions, the United States did not immediately release Plaintiff Claridy, despite the dire circumstances involved.  Instead, fourteen months later, the parties agreed to a pretextual release under "Compassionate Release" even though no such Motion had been previously sought, and Claridy was in good overall physical health.

73.     As a direct and proximate result of the tortious actions and constitutional violations of the Defendants, taken with malicious intent and willful indifference, Plaintiff Timothy Claridy had and continues to have injuries, including but not limited to loss of liberty, physical injury, lost wages, lost time with loved ones, legal costs and fees, mental anguish, emotional pain and suffering, humiliation, anxiety, worry, injury to health, loss of time, and damage to reputation, and other compensatory damages.

### Count VI:
### (Civil Conspiracy)
### (All Defendants)

74.     Plaintiff Claridy hereby incorporates and restates by reference, Paragraphs 1 through 73, and further states as follows:

74.     Additional criminal and tortious acts in furtherance of this conspiracy, include the

various false arrests, planting of evidence, and false imprisonments of Plaintiff Timothy Claridy, as well as violations of Constitutional Rights.

75. Because of Defendants unlawful and tortious acts, in furtherance of the conspiracy, and as a direct and proximate result of the tortious actions and constitutional violations of the Defendants, taken with malicious intent and willful indifference, Plaintiff Timothy Claridy had and continues to have injuries, including but not limited to loss of liberty, physical injury, lost wages, lost time with loved ones, legal costs and fees, mental anguish, emotional pain and suffering, humiliation, anxiety, worry, injury to health, loss of time, and damage to reputation, and other compensatory damages.

**Count VII:**
**(Malicious Use of Process)**
**(All Defendants)**

76. Plaintiff Claridy hereby incorporates and restates by reference, Paragraphs 1 through 75, and further states as follows:

77. Defendants instituted criminal and further proceedings against Plaintiff Claridy, without probable cause.

78. These proceedings were instituted against Plaintiff with malice.

79. As a direct and proximate result of the tortious actions and constitutional violations of the Defendants, taken with malicious intent and willful indifference, Plaintiff Timothy Claridy had and continues to have injuries, including but not limited to loss of liberty, physical injury, lost wages, lost time with loved ones, legal costs and fees, mental anguish, emotional pain and suffering, humiliation, anxiety,

38

worry, injury to health, loss of time, and damage to reputation, and other compensatory damages.

## Count VIII:
### (Vicarious Liability by United States of America, Baltimore City Police Department, Mayor and City of Baltimore, through *Respondeat Superior*)

80. Plaintiff Claridy hereby incorporates and restates by reference, Paragraphs 1 through 79, and further states as follows:

81. At the time of the occurrences which are the subject of the Complaint herein, Defendant Officers Gladstone and Defendant Unknown Federal Officers, were the agents, servants, and/or employees of the United States of America.  Defendant Gladstone, had a "dual hat" role working for both Defendant United States of America and  Defendant Baltimore City Police Department.  Defendant Mayor and City of Baltimore, has potential liability as well, based on legal arguments they have made elsewhere, which attempt to argue against BPD being a proper source of Vicarious Liability, as well, as the direct monetary benefits that accrued to the City, through the "Revenue agreement" from Searches and Seizures from the HIDTA program, as well the Federal Government's funding of the "Joint Task" force in this matter.

82. Thus, Defendants United States of America,  Baltimore City Police Department, and Mayor and City Council of Baltimore, are liable for the acts of Defendants Officers under *respondeat superior* and *Baltimore City Police Dep't v. Potts,* 468 Md. 265 (2020).

83.     As a direct and proximate result of the tortious actions and constitutional violations of the Defendants, taken with malicious intent and willful indifference, Plaintiff Timothy Claridy had and continues to have injuries, including but not limited to loss of liberty, physical injury, lost wages, lost time with loved ones, legal costs and fees, mental anguish, emotional pain and suffering, humiliation, anxiety, worry, injury to health, loss of time, and damage to reputation, and other compensatory damages.

**WHEREFORE**, the Plaintiff Timothy Claridy, prays for judgment against all of the Federal Defendants named above of United States of America, Unknown Federal Agents, and Keith Gladstone, jointly and severally, in the amount of Fourteen Million Dollars ($14,000,000.00) for compensatory damages against the United States of America (including its agencies and agents, officers and employees); an additional Fourteen Million Dollars ($14,000,000.00) in compensatory damages and Twenty-Eight Million Dollars ($28,000,000) in punitive damages against the State Defendants, the Baltimore City Police Department, Mayor and City Council of Baltimore, and Officer Keith Gladstone; and against all co-Defendants, for additional interest, attorney's fees and all related costs of this suit and related actions to vindicate Civil Rights Violations, including under 42 U.S.C. Section §1988.  Further, Plaintiff requests this Court order any further just and equitable relief that may be appropriate.

Respectfully submitted by,


_____/s/ Michael Wein_____


Michael Wein, Esquire
*Law Offices of Michael A. Wein, LLC*
7845 Belle Point Drive
Greenbelt, Maryland 20770
Bar Number: 15950
(301) 441-1151
Fax-(301) 441-8877
weinlaw@hotmail.com


## **DEMAND FOR JURY TRIAL**

The Plaintiff Timothy Claridy hereby respectfully demands a trial by jury in this case.


_/s/ Michael Wein,_____


Michael Wein, Esquire
Counsel for Plaintiff Timothy Claridy

41